It's number 19-5126, Jane Doe v. University of Kentucky. Oral argument, 15 minutes per side. Ms. Correa for the appellant. Good morning. May it please the court, my name is Linda Correa and I have the privilege of representing Jane Doe in this case. With me at council's table is my associate Roshni Shikari. Title IX requires that... Are you requesting any rebuttal time? I apologize, Your Honor. Yes, three minutes, please. Title IX requires that no person in the United States shall be excluded from participation in, denied the benefits of, or subjected to discrimination in any education program or activity receiving federal financial assistance. The Supreme Court has said this repeatedly and the district court's order below flies in the face of that and cannot be squared with the plain language of the statute, which prohibits discrimination against any person. In Cannon, the plaintiff was an applicant. In North Haven, the plaintiff was a teacher. In Jackson, the plaintiff was a coach. In case after case involving student athletics, courts certified classes of plaintiffs who include future students. Even though it says no person, you don't argue that there doesn't have to be some connection between the claimant victim and the educational institution. I'm not using the word student, but it can't just be somebody who happened to be taking a shortcut and walking across campus that was assaulted. There has to be some connection to the facility. We don't argue that. So what the statute tells us is the question really is whether the institution offered a program or activity or an education opportunity or benefit to the plaintiff. And here, clearly, UK provided those things to Jane Doe. She resided in their dorm on their campus. So the dorm is an educational opportunity or benefit? The dorm is part of the entire operation of the institution that is an educational program or activity. The student is taking part in the education. The person here, because she's not a student at UK, right? Right. Although you said something about an applicant or a recruit. I wasn't sure about that one. But in my community, I can just go and use the running track at our local college. I can use the library. I can use the cafeteria. Am I protected in any of those activities or all of them? Every case is going to be a fact-specific inquiry. It's going to depend on the context in which the person is using those facilities. So use is a little bit too loose. Where the person is participating in or taking the benefit of an educational program or activity on the campus, that person would be covered. So to use your analogy, someone happens to be passing through the campus because that is between point A and B, and A and B have no connection to the university. They're just passing through. That person probably doesn't have a Title IX claim. If that person is on the campus because they're there to attend a lecture in the lecture hall that's an educational program or activity. So Senator Sanders comes to speak at Harvard and anybody in Cambridge who comes to hear the lecture is protected. We're conflating two things. The coverage of the statute under Section 1687 focuses on the institution. And under Section 1687, the analysis is an institution-wide picture on whether the dependent entity is covered. And so the idea that you parse out whether a particular activity or a residence or a hall or a class or an athletic event or a lecture is a program or activity was rejected after Grove City. That's your no piecemeal argument, but I thought I was looking at the other side, which is a person who is not generically a student. And that's where most of the piecemeal parts come in is something educational. But my example was simply a citizen attending an educational event. I mean, very frequently somebody's coming to give a lecture on their latest discoveries about cosmology. That's terribly educational. But then are you a person who is being denied an educational opportunity or benefit if you have no other connection other than as a citizen? If you are a person who came to the institution for that purpose, you are being denied an educational benefit of the institution. It shouldn't be surprising that institutions that receive federal financial assistance should be expected to ensure that someone coming to their lectures, because they do open their doors to all kinds of events, educational events, that the institution should be expected to make sure that anyone who participates in those events is not going to be subjected to sex discrimination or is not going to be sexually assaulted and that the institution is responsible for its response to those events. And the other part of it is who does the university have control over? We talk about student-on-student harassment, which is what most of these cases are. In my example, what about person-on-person harassment? You attend the lecture. You are harassed by someone who is also just a person in the community, but it's on the campus. Is the university liable? That's a fair question. The issue is the degree of control that the institution has over everyone involved. So the university has control over the campus. The university has control over the assailant if that person is connected to the institution. But if the assailant commits the assault at a bar, let's suppose again, Ms. Doe, here the assault was in the dorms, I understand it, but suppose it's the same person at a bar in the community, that might still prevent her in exactly the same way as she claims taking advantage here. Because the issue is what is the institution's response to the report that Doe was sexually assaulted? But that would apply if Mr. X, whatever the alleged assailant was, had committed it in a bar. Off-campus situations still included because the assailant is someone over whom the institution has control. In your view, it really rests on their having control over the alleged perpetrator and then some tenuous connection to the university's activities. Is that kind of a fair statement? That's part of what courts have looked at. But the issue is Title IX is about eradicating sex discrimination in education. It's not about adjudicating sexual assault or rape in a criminal sense. It is about making sure that the university's response to the knowledge that a person on their campus accessing benefits of their programs or activities is such that she is able to continue to pursue her education. That that experience doesn't derail her education. That's what Title IX is about. It's not about adjudicating these events in a criminal sense. Okay. And so just to be clear then, what you call her education would include clearly lectures that are open to the citizens, use of the track, use of the library, use of the cafeteria? Yes. Those are benefits of the institution. And in this case... Educational benefits of the institution. Everything that the institution does is an educational benefit. Everything the institution does is an educational benefit. Okay. And so the error below is that the district court adopted the university's characterization of other circuit decisions that have limited the application of Title IX to students. That's just not right. What's your best case for a case that has upheld what I called, I said not my view, but I would characterize as tenuous, let's say a use of a track, use of a library, attendance at a lecture? The best case... Anything close to that? to have Title IX protection at an institution. In the First Circuit and in the Fourth Circuit, the earlier case in Frazier is obliterated by that Brown decision. But where courts have imprecisely said that the plaintiff has to show that she was a student, that just isn't supported by the statute and that's incorrect. But in Brown, that was a student at a different college and the outcome was unfavorable to the plaintiff, right? The reason the outcome was unfavorable to the plaintiff was because the plaintiff, according to the court, did not plead sufficient facts to meet the standard. But that doesn't mean that the standard was any different. The standard was still that the statute says no person shall be denied the benefit of, etc. And the court explicitly said that the victim does not show that she was enrolled in the institution in order to have Title IX protection. And that court would have expanded or would have given protection under Title IX to all members of the public, or so it seemed. Similarly, in the Eighth Circuit under KT, the court decided, assumed without deciding specifically, that the person involved did have coverage under Title IX. In our case, Jane Doe had the benefits of living in the residence hall, which UK touted as part of a holistic experience that BCTC students had to enhance their entire educational experience and to encourage them to succeed. She had access to computer and online facilities that the public did not have access to. And she had borrowing privileges at the UK library that the general public did not have access to. And she was required to follow the Student Code of Conduct. So I see my time is up, unless the court has other questions. So for all of those reasons, here, after the assault and the completely inadequate response by the university, Jane Doe had none of those benefits. And that's the violation, and we ask the court to reverse the decision below. Thank you. Counsel, good morning. Good morning, Your Honor. May it please the court? Ms. Correa, the judgment of the district court below should be affirmed for three reasons. First, the plaintiff is not within the scope of persons who holds a private right of action to sue for damages for peer harassment under Title IX. Why not? Second, I'm sorry? Why not? Why is she not within the class? Because she was not a participant in an educational program. What I just heard a few minutes ago, and I think we need to address that choice of language, was that everything the university does is an educational benefit, and she was denied an educational benefit. That's not the proper phrasing under the statute, I don't believe. It's whether or not she received the benefits of an educational program or an educational activity. While everything the university does has a learning element to it, not everything the university does would qualify as an educational program or activity. You're not suggesting that just classroom activities would be the educational benefit, because as counsel just stated, UK touted this language about living in the dorm and participating in programs was part of this holistic education. And it seems that in this instance, Ms. Doe was going to a community college. She had the benefit of living in the dorm and interacting with, ostensibly, her future classmates. I mean, when she comes to the UK, eventually after completing the junior college thing, then she's right there with her class. So why doesn't all of that, by UK's own admission, constitute part of an educational benefit? Well, I think multiple reasons. The first of which you cannot, we can't assume, we would hope, but we cannot assume that Ms. Doe was going to be a University of Kentucky student. But she said that was her goal. But if that were the case, Your Honor, if all it takes is I want to be a UK student one day, then anyone who sets foot on that campus, who wants to be a UK student one day, would be covered within the implied right of action under Title IX. That's not what KT says, from your colleagues in the Eighth Circuit. It can't stretch that far. But I think that naked statement, though, really does not fully encapsulate the extent of Ms. Doe's immersion into programmatic activities at UK. But I will let you go through your three points. Okay. Well, so the other two, and very closely related to that, and I was just getting ready to address that, is what does UK have substantial control over? You know, that's what, when you look at Gebster, and you look at Davis, that's what the Supreme Court has said. And it was alluded to earlier about the off-campus incidents, and we're drifting back into yesterday almost. But substantial control over not just the alleged harasser, but also the context in which it occurs. As Davis itself says, in most cases that this Court has had, have dealt with K-12 situations, where the peer-to-peer harassment has occurred in high schools and middle schools. I'm not aware of a peer-to-peer harassment case that the Sixth Circuit has dealt with on a college campus, and that's important because of what Davis says. Davis says that K-12 schools have a much greater degree of control over their students than what colleges do over free adults. And so in this situation, the university doesn't have substantial control over the way that adults interact with each other on campus, according to what Davis in Title IX addresses. And that's why they look at what is the university's response, correct? Correct. And the response here, plainly, was not deliberately indifferent. Incidentally, within a day after this is reported to the UK police, the university is involved, the alleged accused is immediately suspended from the university. He is given a letter which was personally served, and he had two hours under that letter to leave campus. Within six days, he has a scheduled hearing on his charges. And his attorney asks for a one-day continuance because he is dealing with his arraignment in Fayette District Court, and the university says no. It won't continue it one day. Now, that was an error on the university's part. And it's due process obligations likely to the James Doe, John Doe, excuse me, accused, which the university fixed. And multiple errors were made, clearly, as the court notes in the record and as Judge Hood pointed out. But if I could address that for a second. Those errors, at best, were negligence. It certainly doesn't rise to being deliberately indifferent to the complaint. How much of this is before us at this point? I mean, I thought that what was before us on appeal was just the standing issue because that's what the district court ruled. That was the latter opinion that the district court ruled. Well, I'm looking at also the statement of the issue on the appellant's brief. It says, does a person have standing to bring a Title IX claim against the university, et cetera? Right. So are we looking beyond the standing question here? We certainly briefed it, and I think you can. There's a long line of cases that allows this court to affirm the district court on any alternative ground. This was addressed initially on our first motion to dismiss, and what Judge Hood held at that time was that through the third hearing. And again, at that point, we're at a different posture. We've got the prior John Doe case from two years ago that was before him as well. And what Judge Hood held was that through the third hearing, so basically through roughly the first 12 months after the report was made, that the university was not deliberately indifferent. But Judge Hood did not know. And in fact, the university had not yet scheduled that fourth hearing, and Judge Hood did not know why. So the case went forward on those grounds. There was some change of counsel. My colleagues here became involved, and it gets rebooted, so to speak. And at that point, Judge Hood then rules, well, I don't even have to address the remaining issues because she's not within the scope of persons who hold the implied right of action to sue for damages. So I think both are before you. That's not how the appellant chose to brief it, and I can address that. But it clearly was within our brief. And I think what's important to note here is part of the claim, because I don't think there's any argument. I certainly didn't hear it this morning. I didn't see it in the brief. There's no argument that the university's initial response within those first 10 to 14 days. Remember, Ms. Doe leaves campus on or about October 14th after this event occurred on October 2nd. So she's off campus within roughly 12 days. I don't believe there's been any argument that the university did anything that was deliberately indifferent in those first 12 days. Well, once she leaves campus, she is no longer on campus. I don't think she's a participant. We've clearly laid out what we think are strong grounds why she was not a participant in the educational program for that 12 days. But certainly once she leaves it, she no longer is. And part of what I think is really telling is a note in the reply brief that the appellant has. What's the relevance of her leaving campus? I mean, if she were an undoubted student and then left campus and didn't come back, wouldn't she have been, you know, prima facie denied educational opportunities? No, no, no, not at all, Your Honor. First of all, at that point, we have no ability as the university to control any context in which she is in. All right? That's the standard, is are we preventing harassment in the context that we have substantial control over? If she's no longer on campus, there is no way that the university can do that. In the very few cases that have recognized that former students might be able to continue a claim, there was prior knowledge, one of two elements. There was either prior knowledge, as in the case in the 11th Circuit for the University of Georgia, prior knowledge of the assailant, including the basketball coach who had been at different schools and had seen similar issues arising and had been told by that university, do something about sexual harassment training. So there's prior knowledge pre-assault, which isn't a fact at all here, not alleged. Or in a different context, the response of the university is, that happened off campus, we're not going to do anything about it. This case is nowhere near either of those two extremes. In this case, the university within 24 hours has suspended the accused and had a hearing within a week to find him responsible for that misconduct. But what I think the heart of Ms. Doe's case is, is paragraphs 29, 30, and 31 from her last complaint, which she briefly addresses on page 18, but mostly the top of page 19 of her reply, when she argues that the University of Kentucky didn't address the rape's impact on her education, despite knowing in October of 14 how the rape was affecting her. She's not our student, and she's left campus. What more can the university do? Now, if she needs resources to address the sexual assault, they're available. Anyone can walk into either the university hospital, seek other mental health treatment at the University of Kentucky, or attend the crisis center that the university has for victims of violence. Anyone can participate in that. It doesn't matter where the assault occurred or what your relationship with the university is or once was. What more can the University of Kentucky do to address her education at a community college when she's no longer living in a university dorm on campus? And beyond that, that's not what Title IX requires. What gives students a private right of action to sue for peer harassment is when the university's deliberately indifferent and doesn't address it. And as we talked yesterday, you have to respond promptly. You have to investigate. You have to take proactive steps. And the university did that immediately after the assault was alleged. You keep using the term students, but you would agree that the act is broader than students, correct? It would apply to counselors, maybe even custodial staff and others, wouldn't it? Well, that's an interesting point. This court has not settled that issue. The Seventh Circuit and the Fifth Circuit have held that employees are not covered under Title IX because they're exclusive remedies under Title VII. Other courts have disagreed with that. I think this court in some unpublished decisions has assumed that to be the case. I'm not aware, and pardon me if I've missed it, but I'm not aware that this court has ever affirmatively ruled that employees hold that private right of action under Title IX. But let me give you a couple other elements of the university and think how they apply it in this. And it kind of goes to some of the points that Judge Boggs was reiterating earlier. I speak every now and then, and I think some of your colleagues have, at the University of Kentucky College of Law's Continuing Legal Education Series that they have. They do multiple CLEs throughout the year. Frequently they're held, and they will be held now in the new law school. So if I'm there, I'm paying a CLE fee. That's the equivalent to tuition. I'm there learning. It's a course of study. It's a required continuing certificate that I must maintain with the Kentucky Bar Association. There's instructors. That meets all the criteria that the Third Circuit laid out in the Mercy Hospital case. I've been out of law school for 22 years now. Am I covered under Title IX if I am sexually harassed there in the hallway of that law school? I think not. And I think the university clearly has no expectations under its spending clause liability with the federal government to impose Title IX liability. There are two other elements that UK has throughout the state. You may be familiar with this. The University of Kentucky has a County Ag Extension Agent Office located in all 120 counties. They're there. They're working with their farmers. They're checking crop yields. They're examining soil concentration. That clearly has an educational element to it. When all of these local farmers come in and work with the University of Kentucky Ag Extension Agent Offices, are they participating in an educational program that they would be covered under Title IX and have a private right of action to sue for harassment? I think not. And even in the student context, that College of Agriculture operates the 4-H program. We have state speech contests and other elements. Those are teeny students that are doing that down to first and second grade with their little posters. I think they're covered under Title IX with the University of Kentucky. Clearly they would be with their schools. For our high school students, we have the Governor's Scholars Program and the Governor's School for the Arts. The Governor's School for the Arts is on UK's campus. The Governor's Scholars Program is typically at Moorhead and Murray, at different campuses throughout the state. These are high school students. They are living on state university campuses, not taking classes at the university. But it's that same university. It's that same residential setting. They're not covered under Title IX as well. You asked earlier what's the connection. The connection is this is a landlord-tenant relationship. And the benefits that she got are very, very similar to that context or those shared by the rest of the state. Let me ask you, because you're sort of raising what's referred to in some of these things as programs run by other people on university campuses. If the university has a summer school program that it's running, you would agree that that's covered? Yes, for its students. And people who are students at something run by the university. My children, I always called it nerd camp. They didn't like that. But for high school students who would come to a university for a program that the university is running on the campus, would you agree with that? Well, I think that's different. If that truly is a university program that can meet, and I like the criteria that the Third Circuit laid out in Mercy as to what is an educational program, if it meets those standards, yes, that's not typically the case for UK. The example I have was that a college ran the nerd camp and a professional ballerina camp and the Washington Redskins training camp. You would presumably argue that the Redskins and the ballerinas don't get coverage. Absolutely. In any summer on the University of Kentucky campus, there's cheerleading camps and dance camps and all those like it, and those are not covered under Title IX. I thank the Court for your time this morning and ask that the judgment below be affirmed. Thank you. Thank you. Judge Batchelder, you're exactly right. Everything that Mr. Bowman just spent his time talking about is not before the Court yet because the plaintiff has not had full discovery to address those issues. The Court below did not address that in the order that is on appeal here. The only issue before the Court is the standing issue. But to the extent that the Court is concerned in any way about deliberate indifference, let me just counter some of the things that Mr. Bowman just pointed out. The issue has been addressed by this circuit in Vance and in Horner. In Vance, the Court was focused on the characteristics of the defendant entity and whether the plaintiff was denied access to the educational opportunities or benefits offered by the school, which goes to Judge Boggs' hypotheticals. Again, Horner looks at the institution-wide application of Title IX to any person who may bring a claim against an education institution and not at parsing out the pieces of whatever is happening on the campus. With respect to the university's deliberate indifference, this is a case where Jane Doe testified at the very first hearing that Mr. Bowman says they quickly held that she was afraid to be on campus, that she was having trouble sleeping, that she was thinking about leaving school. And no one did anything about that. No one. And that's what Title IX is about. That is part of the university's response. They had an obligation to respond in a way that kept her in school, and they didn't do that. They're focused on checking the boxes. Did she get to decide what that would be? No, but the courts have said she does not get to decide that. But the analysis is whether the university's response was clearly unreasonable in light of the known circumstances. And here, Jane Doe has pleaded more than enough to show that their response was clearly unreasonable in light of the known circumstances. They had a process. They had many hearings. But it was obviously ineffective, and they knew it was ineffective. They had procedural error after procedural error. And between this case, and since Mr. Bowman has brought it up many times, yesterday's case and others that have been before this court recently, there have been a dozen different hearings involving this process at this institution, and they know they can't get it right. And that shows deliberate indifference, that they have not fixed it. It also is alleged in the complaint that the chief of police specifically deliberately interfered with a witness in favor of the assailant to impede the plaintiff. That is potential evidence of deliberate indifference, but we haven't had discovery on that yet. Hopefully we won't have to come back on that question, but it's not before the court at this time. In sum, Your Honor, this is a prolonged series of hearings and events for our plaintiff that did not ensure that her education was not derailed. The university's response was deliberately indifferent. We'll get there at some point, we hope, if the court sends us back to the district court. But she clearly has standing to make this claim, because she's a person who has denied the benefits and the educational opportunities of UK under Vance. Thank you. Thank you. The matter is submitted, and we will provide an opinion in due course. Thank you very much.